SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Ray Palmer, | No.  CV 12-8214-PCT-DGC (MHB) |
| Plaintiff, | |
| vs. | **ORDER** |
| Wexford Medical, et al., | |
| Defendants. | |

Plaintiff Donald Ray Palmer, who is confined in the Arizona State Prison Complex-Kaibab in Winslow, Arizona, filed this civil rights case against Arizona Department of Corrections (ADC) employees and Wexford Health Sources (Wexford) employees.  Plaintiff's Motion for a Preliminary Injunction and Request for Hearing is now before the Court.  (Doc. 12.)  The Court will deny the motion.

**I.     Background**

In his First Amended Complaint, Plaintiff alleges that he suffers from serious knee injuries that cause him unbearable pain and limit his ability to walk and navigate the hilly terrain of the Winslow Complex.  He alleges that he requested, and his doctor supported, a transfer to another Complex with flat terrain and handicap access.  In order to receive the transfer, he was told that he would have to cancel an appointment with an outside specialist and resume treatment after his move.  Plaintiff canceled the appointment and requested a transfer.

1    Plaintiff alleges in Counts I and II that Defendants Stowell and Ryan violated his
2    Eighth Amendment rights when they were deliberately indifferent to his medical needs
3    by both denying his transfer to a new unit and refusing to reschedule Plaintiff's
4    appointment with the specialist.  Plaintiff claims that as a result of Defendants' actions he
5    suffers extreme pain that is aggravated by the difficult terrain at the Winslow Complex
6    and the lack of handicap accessible facilities.   Plaintiff seeks money damages and
7    injunctive relief.
8    The Court directed Defendants Stowell and Ryan to answer the First Amended
9    Complaint.  (Doc. 13.) In addition to filing his First Amended Complaint, Plaintiff moved
10   for a Preliminary Injunction directing Defendants to transfer him to a more appropriate
11   unit.  The Court directed Defendants to respond to Plaintiff's Motion for a Preliminary
12   Injunction.  (Doc. 14.)
13   **II.     Legal Standards**
14        **A.        Preliminary Injunction**
15        A preliminary injunction is an extraordinary remedy "that should not be granted
16   unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v.*
17   *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, &
18   M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-130 (2d ed. 1995)).   An
19   injunction may be granted only where the movant shows that "he is likely to succeed on
20   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,
21   that the balance of equities tips in his favor, and that an injunction is in the public
22   interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking*
23   *Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  The movant has
24   the burden of proof on each element of the test.  *Environmental Council of Sacramento v.*
25   *Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).  In addition, because the function of
26   a preliminary injunction is to preserve the status quo pending a determination on the
27   merits, *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988), there is heightened
28   scrutiny where the movant seeks to alter rather than maintain the status quo.  *Dahl v.*

1    *HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as
2    opposed to prohibitory, injunctions are "subject to a heightened scrutiny and should not
3    be issued unless the facts and law clearly favor the moving party").

4         A preliminary injunction can also be granted when a plaintiff demonstrates that
5    "serious questions going to the merits were raised and the balance of hardships tips
6    sharply in [plaintiff's] favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127,
7    1134-35 (9th Cir. 2011), citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir.
8    2008) (en banc).  This approach requires that the elements of the preliminary injunction
9    test be balanced, so that a stronger showing of one element may offset a weaker showing
10   of another.  "'[S]erious questions going to the merits' and a balance of hardships that tips
11   sharply towards the plaintiff can support issuance of a preliminary injunction, so long as
12   the plaintiff also shows that there is a likelihood of irreparable injury and that the
13   injunction is in the public interest." *Id.* at 1135

14        The Prison Litigation Reform Act (PLRA) also imposes requirements on prisoner
15   litigants who seek preliminary injunctive relief against prison officials.  "Preliminary
16   injunctive relief must be narrowly drawn, extend no further than necessary to correct the
17   harm the court finds requires preliminary relief, and be the least intrusive means
18   necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Thus, § 3626(a)(2) limits the
19   court's power to grant preliminary injunctive relief to inmates; "no longer may courts
20   grant or approve relief that binds prison administrators to do more than the constitutional
21   minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

22   ### B.    Medical Claim

23        To prevail on a claim under the Eighth Amendment for prison medical care, a
24   prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v.
25   Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104
26   (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure
27   to treat the condition could result in further significant injury or the unnecessary and
28   wanton infliction of pain, and (2) that the defendant's response was deliberately

- 3 -

indifferent.  *Jett*, 439 F.3d at 1096 (citations omitted).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.

**III.    Arguments and Analysis**

    **A.    Arguments**

        **1.    Plaintiff**

Plaintiff reasserts the allegations in his First Amended Complaint.  He alleges that Winslow has slopes, hills, stairs, uneven surfaces and no handicap access.  (Doc.  11.)  He also asserts that he can barely lift his leg or extend his knee without pain, that his knee is swollen and stiff every day, and that it is painful even when he is sitting.  (*Id.* 14.)

        **2.    Defendant Ryan[1]**

In support of his opposition to the motion (Doc. 19), Defendant submits the declarations of Zora Mata (Ex. A, Mata Decl.), Dr. Richard Rowe (Ex. B, Rowe Decl.), Alfreda Harris (Ex. C, Harris Decl.), and various medical and other records.  Defendant asserts that because of Plaintiff's close-custody classification, Plaintiff was housed at the Arizona State Prison Complex (ASPC) – Lewis from February 17, 2009 to May 29, 2012, and that when his classification was reduced to medium, he was transferred to ASPC–Winslow on May 29, 2012. (Mata Decl. ¶¶ 4-5.)  Defendant asserts that the Offender Services Bureau, which is responsible for institutional assignments, is not aware of any medical issues that would restrict Plaintiff's housing assignment.  (*Id.* ¶¶ 3, 5.)

Defendant contends that Plaintiff's medical condition does not warrant special housing accommodations and his medical records do not indicate that he is ADA

---

[1] Defendant Stowell has not been served.  (Doc. 30.)

qualified or that he suffers from an inability to stand or walk.  (Rowe Decl. ¶ 26.) Defendant argues that neither Defendant has been deliberately indifferent to serious medical needs and that prisoners do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one correctional facility to another.  (Doc. 19.)

Defendant details Plaintiff's medical care regarding his knee.  (*Id.* at 3-8.)  He first complained of pain in his right knee on October 11, 2011, saying he had injured his right knee the year before and it was still swollen and hurt when he stood on it for a long time or turned sharply.  (Rowe Decl. ¶ 4.)  Plaintiff was seen by Dr. Merchant on October 25, 2011, who assessed right knee instability and prescribed Ibuprofen 800 mg., requested a right knee sleeve, and ordered an MRI to rule out an anterior cruciate ligament (ACL) rupture.  (*Id.*)  An x-ray on January 23, 2012, revealed "no evidence of fracture or dislocation. No radiopaque foreign body. No evidence of joint effusion."  (*Id.* ¶ 7.) The MRI conducted the same date, showed:

> Complex tear in the posterior horn and body of the -lateral meniscus.
> Subacute Bone bruise in the anterior tibial plateau with subchondral cystic changes.
> Small joint effusion.
> The ACL and PCL [posterior cruciate ligament] are intact.

(*Id.* ¶ 8.)  On January 24, 2012, Plaintiff was issued an SNO for a large right knee sleeve.  (*Id.* ¶ 9.)  The SNO expired on January 24, 2013.  (*Id.*)  On February 7, 2012, Dr. Merchant requested an orthopedic surgery consult.  (*Id.* ¶ 10.)

On May 31, 2012, Plaintiff asked to see a doctor, complaining in a Health Needs Request (HNR) about difficulty getting around the yard.  (*Id.* ¶ 11.)  On June 5, 2012, Plaintiff advised the nurse practitioner that he injured his right knee two years ago and was told at that time that it was fractured and was waiting for it to be repaired but he was moved.  (*Id.* ¶ 12.)  He complained about pain, swelling, and walking on uneven terrain and stiffening of his knee.  (*Id.*)  His current medications were Terazosin 2 mg. and

Ibuprofen 800 mg. as needed.  (*Id*.)  It was noted that Plaintiff had a limp of the right leg, no bruising of the right knee, mild swelling to the inner side of the right knee, and that Plaintiff displayed discomfort upon palpation to the inner/outer side of the right knee; there was occasional popping upon knee bends.  (*Id*.)  The popliteal pulse was strong and palpable.  (*Id*.)  There was full range of motion of the right foot and toe capillary refill in 23 seconds.  (*Id*.)

On June 12, 2012, Plaintiff complained of knee pain. Dr. Gibula noted that Plaintiff first injured his knee two years ago when he landed angulated while playing basketball, he did not have surgery at that time, and he reinjured the knee one year later. (*Id*. ¶ 13.)  Dr. Gibula noted that the January 2012 MRI showed serious pathology in the knee joint.  (*Id*.)  Plaintiff claimed that an orthopedic referral was made, but he was moved to this facility.  (*Id*.)  Plaintiff wore a brace on the right knee.  (*Id*.)  Dr. Gibula observed mild flexion/extension, no patellar tenderness, marked meniscus stress pain, and nearly full range of motion (slight extension limit).  (*Id*.)  Plaintiff was assessed with internal right knee derangement and a new referral for an orthopedic consult was requested.  (*Id*.)  Plaintiff was also prescribed Ibuprofen 800 mg. three times a day as needed.  (*Id*.)

Thereafter, on June 20, 2012, Dr. Gibula advised Plaintiff that he had spoken with staff and was advised that Plaintiff could not be placed on another yard at the Winslow Complex.  (Harris Decl. ¶ 3.)  He advised Plaintiff that he could be moved to another facility to have a level yard, but that the move would cancel his orthopedic appointment and he would have to start the process over.  (*Id*.)  On June 28 and July 2, 2012, Plaintiff advised Dr. Gibula that he would like to be moved to another yard and start the consult process over.  (*Id*., Exs. 2 & 3.)  Dr. Gibula requested staff to forward Plaintiff's response to the clinical coordinator.  (*Id*., Ex. 2.)

On July 5, 2012, Plaintiff advised Dr. Gibula that Plaintiff signed a refusal for treatment canceling any further appointments due to his knee problems and stating that he wanted to be moved to a yard with no hills or holes.  (*Id*., Ex. 4.)  On July 16, he was

advised by Stowell that all yards have stairs and slopes and that discomfort is not a medical need.  (*Id.*, Ex. 5.)  On August 8, Stowell advised that "[m]any inmates on this complex have bad knees, ankles & feet and various other issues but these are not usually reason to move someone. Once [the provider] sees you together we can discuss the problem and try to bring some resolve to it." (*Id.*, Ex. 6.)

On August 23, 2012, Plaintiff advised staff that he did not want to have any surgical intervention; just a yard with a single level.  (Rowe Decl. ¶ 15.)  Dr. Gibula explained to Plaintiff that he was advised that he did not have authority to move an inmate to another yard.  (*Id.*)  Plaintiff stated that he would be okay with another section of his current yard if security would allow it.  (*Id.*)  Dr. Gibula noted he would discuss this situation with administration. (*Id.*)

On September 4, 2012, Dr. Gibula advised Plaintiff that according to the Facility Health Administrator, ADC does not transfer inmates to other facilities for the reason specified.  (Harris Decl. ¶ 3, Ex. 8.)  On September 11, 2012, in response to his grievance appeal, Plaintiff was advised by Stowell that:

> Dr. Gibula is a registry MD and is not aware of DOC policy and procedure. Since we do not move inmates for reasons such as yours the information he gave you was incorrect.  Inmates are only moved to corridor facilities when their healthcare cannot be maintained here, that is not the case with you. You were scheduled with the Ortho Group and you refused that appointment, that was your choice to make.  You also reside in bed 2 which gives you fairly level access to the outside with sidewalks to chow, library and a long slope ramp to the rec field and flat side walks to access medical.

(*Id.*, Ex. 7.)

On October 26, 2012, Plaintiff was seen in response to his HNR requesting another knee sleeve.  (Rowe Decl. ¶¶ 16-17.)  After an examination, Nurse Lucek recommended that Plaintiff take care with his knee until he could be scheduled with a provider.  (*Id.* ¶ 17.)  On November 8, 2012, Dr. Gibula examined Plaintiff regarding a new knee brace.  (*Id.* ¶ 18.)  Dr. Gibula noted that Plaintiff's knees had no edemas or

1   effusions, the right knee had pain with attempted full extension and marked meniscus

2   strain tenderness, and Plaintiff claimed that the tibial tubercle hurt when he stood.

3   Plaintiff was assessed with chronic knee pain and prescribed Ibuprofen and a knee brace

4   with lateral reinforcements and a patellar hole was requested.  (*Id.*)  Plaintiff received the

5   new knee sleeve on November 13, 2012, but it was too tight and the different size brace

6   also did not fit.  (*Id.* ¶ 19.)  Plaintiff was scheduled for the health care provider for an

7   evaluation and other options.  (*Id.*)

8          Plaintiff was seen by Dr. Gibula on November 20, 2012, to be evaluated for the

9   knee sleeve issue.  (*Id.* ¶ 20.)  At this time, there was some effusion on the right knee

10  without erythema or point tenderness.  (*Id.*)  ACL tension increased pain, meniscus stress

11  did not.  (*Id.*)  Plaintiff was assessed with chronic knee pain and recurrent edema.  (*Id.*)

12  Dr. Gibula noted that he would order the right "clinical" knee brace.  (*Id.*)

13         On January 10, 2013, Plaintiff was issued an SNO for a knee sleeve; the SNO

14  expires on January 20, 2029.  (*Id.* ¶ 21.)  On February 14, 2013, Plaintiff was seen for an

15  orthopedic complaint, and it was noted that he had been having problems with torn

16  medial ligament of his right knee for two years, treatment was conservative, and there

17  was an increase in pain (continuous) and some instability.  (*Id.* ¶ 22.)  The knee did not

18  have any edema or erythema.  (*Id.*)  Adult Nurse Practitioner (ANP) Gallegos assessed

19  Plaintiff with right knee pain and medial ligament tear treatment plan was to discontinue

20  Motrin/Ibuprofen, prescribed Naproxen 500 mg twice a day, quad muscle exercises, and

21  for Plaintiff to follow-up in four weeks.  (*Id.*)

22         Plaintiff was next seen on March 14, 2013, by ANP Gallegos for an orthopedic

23  complaint follow-up.  (*Id.* ¶ 23.)  The knee had pain and was unstable, pain/trace edema,

24  and decreased range of motion.  (*Id.*)  He was assessed with medial ligament tear,

25  arthritis, and knee instability.  (*Id.*)  The Naproxen was discontinued and Meloxicam 7.5

26  mg. twice a day was prescribed.  An orthopedic consult was requested.  (*Id.*)

27

28

Plaintiff submitted an HNR on April 8, 2013, complaining that Meloxicam was not working for his knee pain. (*Id.* ¶ 24.)  He requested a prescription for Ibuprofen. (*Id.*)  He was scheduled for a medical appointment. (*Id.*)

On May 8, 2013, a consultation request was submitted requesting an orthopedic consult for Plaintiff's right medial ligament tear, and a copy of the request was given to the clinical coordinator on May 9, 2013, for processing. (*Id.* ¶ 25.)

Defendant argues that Plaintiff is not entitled to a preliminary injunction because there are no facts that indicate that either Defendant possessed the requisite state of mind for a deliberate indifference claim. (Doc. 19 at 10.)  There is no medical reason for Plaintiff to be transferred to another prison complex. (*Id.*, Rowe Decl. ¶ 26.)  Defendants are not denying Plaintiff an orthopedic consultation for his right knee, and prisoners do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one correctional facility to another. (Doc. 19 at 11.)

### 3.    Plaintiff's Reply

Plaintiff submits a reply with exhibits and a Statement of Facts.[2]  (Docs. 28, 29.) Plaintiff does not dispute most of the facts alleged by Defendant.  He states that there is no evidence that when he was transferred to Winslow, the Offender Services Bureau checked with medical staff to see if the transfer to another institution was in Plaintiff's best interest. (Doc. 28 at 1-2.)  He restates the medical appointments and findings set out by Defendants. (*Id.* at 3-9.)  He also sets out the discussions he had and grievances he wrote regarding his housing assignment; he spoke with the Deputy Warden on June 14, 2012. (*Id.* at 5-6.)  The Deputy Warden responded that she had spoken with Stowell, who said that the housing assignment was appropriate. (*Id.* at 6.)  Stowell sent Plaintiff a response stating that many inmates had bad knees and that once the provider sees Plaintiff, they could discuss a resolution. (*Id.* at 7.)  Plaintiff asserts that this never

---

[2] Defendant moves for clarification regarding whether he needs to file a response to Plaintiff's Statement of Facts. (Doc. 32.)  The Court finds that no response is necessary.

1    happened.   Plaintiff details other grievances that he sent and responses received.  (*Id.* at
2    7-9.)  One response was from Ryan, denying the grievance insofar as Plaintiff sought to
3    be moved and upholding the grievance regarding Plaintiff's complaint that the
4    consultation was not rescheduled after Plaintiff refused it.  (*Id.*, Ex. J, Ryan resp., dated
5    Feb. 8, 2013.)  Ryan directed that Plaintiff be seen by a local provider within 30 days.
6    (*Id.*)

7            Plaintiff also asserts that he was seen in May 2013 by Dr. Hamilton and informed
8    Hamilton that he had tripped on rocky terrain.  (*Id.* at 9.)  Plaintiff also submits PSOF
9    attaching a Radiographic Consultation Report, dated May 5, 2013, showing MRI
10   findings.  (Doc. 29, Ex. A.)

11           Plaintiff argues that he has a serious medical condition and that Defendants were
12   deliberately indifferent to his medical needs when they did not transfer him knowing he
13   would suffer unnecessary pain.  (Doc. 28 at 13-16.)  He notes that Dr. Gibula agreed that
14   transferring Plaintiff would be a good idea.  (*Id.* at 14.)

15           **B.      Analysis**

16           Plaintiff fails to show a likelihood of success on the merits, or the existence of
17   serious questions, as to the denial of a transfer.  Moreover, Plaintiff has no constitutional
18   right to be housed at a particular prison facility.  The Court finds that no hearing is
19   necessary.

20           As noted above, to act with deliberate indifference a prison official must both
21   know of and disregard an excessive risk to inmate health.  The official must both be
22   aware of facts from which the inference could be drawn that a substantial risk of serious
23   harm exists, and he must actually draw the inference.  *Farmer*, 511 U.S. at 837.
24   Although deliberate indifference in the medical context may be shown by failure to
25   respond to a prisoner's pain or possible medical need, *Jett*, 439 F.3d at 1096, differences
26   in judgment between an inmate and prison medical personnel regarding an appropriate
27   medical diagnosis or treatment are not enough to establish a deliberate-indifference
28   claim. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

1    Here, even if a prison doctor thought a move might be a good idea, that is not

2 sufficient to support a claim of deliberate indifference against Defendant or the requested

3 injunctive relief.  Moreover, the Court cannot locate any such notation by the doctor in

4 the medical records.  The recent MRI report shows knee damage, but Plaintiff provides

5 no evidence to establish what the report means in terms of his care or housing

6 requirements. There is also no evidence that other facilities have significantly fewer

7 slopes and stairs or less rocky terrain.  Plaintiff has failed to establish anything more than

8 his own belief that he must be moved to another facility.

9    In addition, prison officials who actually knew of a substantial risk to inmate

10 health or safety may be found free from liability if they responded reasonably to the risk,

11 even if harm ultimately was not averted.  *Farmer*, 511 U.S. at 845.  Here, Ryan upheld

12 Plaintiff's grievance in part, directing that he be seen by a medical provider.  In other

13 words, Ryan did not ignore Plaintiff's knee problem even though Ryan denied the request

14 for a move.  And Ryan relied on medical staff to make an assessment of Plaintiff's need

15 to be moved to another facility.  Plaintiff has not shown that he is likely to prove that

16 Defendants were deliberately indifferent to his medical needs.  Nor has he raised serious

17 questions about whether Defendants violated his constitutional rights.

18    Plaintiff has no right to be housed at a particular facility.  *See Meachum v. Fano*,

19 427 U.S. 215, 224-25 (1976).  The Court must defer to prison officials' expert judgments.

20 *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010).  In *Bell v. Wolfish*, the Supreme

21 Court explained:

22

23    [T]he problems that arise in the day-to-day operation of a corrections
     facility are not susceptible of easy solutions.  Prison administrators
24    therefore should be accorded wide-ranging deference in the adoption and
     execution of policies and practices that in their judgment are needed to
25    preserve internal order and discipline and maintain institutional security.

26 *Norwood*, 591 F.3d at 1066 (quoting *Bell*, 441 U.S. 520, 547 (1979).  Deference requires

27 "that neither judge [nor jury] freely substitute their judgment for that of officials who

28

- 11 -

1  have made a considered choice." *Norwood*, 1066-67 (*quoting  Whitley v. Albers*, 475

2  U.S. 312, 322 (1985).)

3  **IT IS ORDERED:**

4       (1)    The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion

5  for a Preliminary Injunction and Request for Hearing (Doc. 12).

6       (2)    The Motion for a Preliminary Injunction and Request for Hearing (Doc. 12)

7  is **denied**.

8       (3)    Defendant's Motion for Clarification (Doc. 32) is **granted**; Defendant need

9  not file a response to Plaintiff's Statement of Facts.

10      Dated this 22nd day of July, 2013.

11

12

13

14  _____
                    David G. Campbell
                 United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -